IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM F. MAGUIRE,            )
                               )
            Plaintiff,         )
                               )
v.                             )     Civil Action No. 09-0908
                               )
MEDTRONIC, INC.,               )
                               )
            Defendant.         )

MEMORANDUM and ORDER

Gary L. Lancaster,
Chief Judge.                                February 26, 2010

          This is an ERISA and breach of contract case. Plaintiff,

William Maguire ("Maguire"), has filed an amended complaint

alleging that defendant, Medtronic, Inc. ("Medtronic"), unlawfully

declined and/or failed to respond to his request to exercise stock

options under Medtronic's Stock Option Replacement Program ("Stock

Option Plan") in violation of the Employee Retirement Income

Security Act ("ERISA"), 29 U.S.C. § 1001, et seq. Maguire contends

that the Stock Option Plan is an "employee benefit program" as

established by ERISA.  Maguire also alleges that defendant has

breached the terms of Stock Option Plan contract.  Maguire seeks

monetary damages, including interest and attorneys' fees.

          Medtronic has filed a Federal Rule of Civil Procedure

12(b)(6) motion to dismiss for failure to state a claim upon which

relief can be granted. [Doc. No. 25].  Medtronic argues that: (1)

the Stock Option Plan is not an employee benefit program as defined

by ERISA, (2) there is no breach of contract, and (3) both claims

are barred by the applicable statute of limitations.

For the reasons to follow, we will grant in part and deny in part Medtronic's motion.

I.   Factual Background

For purposes of deciding this motion, the following facts alleged in plaintiff's amended complaint are taken as true.[1]

Plaintiff, William Maguire, is a resident of Bridgeville, Pennsylvania.  Defendant, Medtronic, Inc., is a corporation with principal place of business in Minneapolis, Minnesota.  Maguire began working as a sales representative for Medtronic's Pittsburgh office in August 2000.

From the beginning of his employment with Medtronic, Maguire participated in the company's Stock Option Plan.  He invested his signing bonus of $62,500 and various other amounts from commissions he earned.  Under the terms of the Stock Option Plan, eligible participants could make an election every six months to forego all or a portion of their commission/incentive compensation (a minimum of five percent), and instead receive a stock option.  Participants received the option to purchase stock at a $4.00 to $1.00 ratio, i.e., $4.00 worth of stocks for every $1.00 of commission, based upon the fair market value of Medtronic

---

[1]

That court also considers the terms of the Stock Option Plan that are attached to Maguire's amended complaint.

2

stock on the last day of the fiscal year the stock was purchased.

The stock option rights vested immediately. Provided that they remained employed by Medtronic, participants had ten years from the date of the grant of the options to exercise the stock options. If they left the company voluntarily, then participants had only thirty days to exercise their stock options or they would lose them. If their employment was terminated because of death, disability or retirement - as defined by the terms of the 1994 Stock Award Plan - participants still had ten years from the date of the grant of the options to exercise them. According to the terms of the 1994 Stock Option Plan, "disability" is defined as:

> the disability of a Participant such that the Participant is considered disabled under any retirement plan of the Company which is qualified under Section 401 of the (Internal Revenue) Code (of 1986), or, in the case of a Participant employed by a non-U.S. Affiliate or in a non-U.S. location, under any retirement plan or long-term disability plan of the Company or such Affiliate applicable to such Participant, or as otherwise determined by the Committee.

Maguire worked for Medtronic until January of 2002, when he allegedly stopped working "due to a disability." [Doc. No. 24, pg. 2]. In December 2008, Maguire contacted Medtronic requesting an application to exercise his stock options. Medtronic did not respond to his requests, and Maguire filed his first complaint on May 27, 2009. He filed his first amended complaint on November 20,

2009.  Medtronic has responded with a motion to dismiss the amended complaint.

II.  Standard of Review

In considering a Rule 12(b)(6) motion, we must be mindful that federal courts require notice pleading, as opposed to the heightened standard of fact pleading.  Federal Rule of Civil Procedure 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

To survive a motion to dismiss, a complaint must contain sufficient facts that, if accepted as true, state "a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 at 570)).  A claim has facial plausibility when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  However, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"  Iqbal, 129 S.Ct. at 1950 (quoting Twombly, 550 U.S. at 555); see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

4

Therefore, when deciding a motion to dismiss under Rule 12(b)(6), we apply the following rules.  The facts alleged in the complaint, but not the legal conclusions, must be taken as true and all reasonable inferences must be drawn in favor of plaintiff.  Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 555.  We may not dismiss a complaint merely because it appears unlikely or improbable that plaintiff can prove the facts alleged or will ultimately prevail on the merits.  Twombly, 550 U.S. at 556, 563 n.8.  Instead, we must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements.  Id. at 556.  In the end, if, in view of the facts alleged, it can be reasonably conceived that the plaintiff could, upon a trial, establish a case that would entitle him to relief, the motion to dismiss should not be granted.  Id. at 563 n.8.

It is on this standard that the court has reviewed defendant's motion.  For the reasons to follow, the court will grant in part and deny in part Medtronic's motion to dismiss.

III.  Discussion

A. Documents attached to motion to dismiss

In evaluating a motion to dismiss, courts can consider "the allegations of the complaint, exhibits attached to the complaint, matters of public record, and any undisputedly authentic

document that a defendant attaches to a motion to dismiss if the plaintiff's claims are based on the document." Bennett v. Itochu Intern., Inc., --- F.Supp.2d ---, 2010 WL 308982 *3 (E.D. Pa. Jan. 25, 2010) (citing Lum v. Bank of Am., 361 F.3d 217, 222 n. 3 (3d Cir. 2004); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). When the court considers documents outside of these, it generally must convert the motion to dismiss into a summary judgment motion. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). However, a court can consider a "'document integral to or explicitly relied upon in the complaint.'" Id. (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)). Plaintiff cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them. Id. The rationale for these exceptions is that "the primary problem raised by looking to documents outside the complaint - lack of notice to the plaintiff - is dissipated '[w]here plaintiff has actual notice ... and has relied upon these documents in framing the complaint.'" In re Rockefeller Ctr. Props., Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999).

B. ERISA Claim

ERISA gives federal courts subject matter jurisdiction over claims brought pursuant to 29 U.S.C. § 1132(a)(1)(B). This

section authorizes a cause of action for benefits due under an employee benefit plan. See 29 U.S.C. § 1132(a)(1)(B). Because an ERISA "plan" is necessary before ERISA's provisions apply, the court must first determine whether Medtronic's Stock Option Plan is, in fact, an ERISA "employee welfare benefit plan." If the answer to this threshold question is no, then the court may dismiss the plaintiff's claims that he is entitled to benefits under ERISA. See Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Employees, 974 F.2d 391, 395 (3d Cir. 1992).

Maguire argues the Stock Option Plan is an employee pension benefit plan under ERISA, as defined by 29 U.S.C. § 1002(2)(A). An employee benefit plan is defined as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. § 1002(3). Such a plan is "designed for the purpose of paying retirement income whether as a result of [its] express terms or surrounding circumstances." Oatway v. American Intern. Group, Inc., 325 F.3d 184, 188 (3d Cir. 2003) (affirming the district court's grant of a motion to dismiss) (citing Murphy v. Inexco Oil Co., 611 F.2d 570, 575 (5th Cir. 1980)). In its regulations, the Department of Labor has interpreted ERISA employee pension benefit plans to exclude "payments made by an employer to some or all of its employees as bonuses for work performed, unless such payments are systematically

deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees." Oatway, 325 F.3d at 188 n.7 (quoting 28 C.F.R. § 2510.3-2(c)).

After reviewing the Stock Option Plan, which Maguire attached to his amended complaint, we conclude that it is not subject to ERISA. A stock option plan generally does not satisfy the pension plan definition set forth above because it is typically not designed to provide retirement income, even if an optionee exercises an option after retirement. See Oatway, 325 F.3d at 188. A stock option serves as a form of compensation and consists primarily of a grant to an employee, by an employer or its affiliate, of an option to purchase stock of the employer. In re Segovia, 404 B.R. 896, 916 (N.D. Cal. 2009). The option is generally granted in return for services that have been or will be rendered to the employer. Id.

In Oatway, the United States Court of Appeals for the Third Circuit found that the AIG stock option plan in question was not designed specifically to provide employees with medical, unemployment, disability, death, vacation, or other specified benefits or to provide income following retirement in order to come within the purview of ERISA. The court held that the post-retirement payments included in the plan were only incidental to the goal of providing current compensation. Oatway, 325 F.3d at 189.

8

Maguire alleges that the Medtronic Stock Option Plan is distinguishable from Oatway because the stock options were purchased with his commissions.  In other words, he had to defer some of his regular compensation in order to obtain the stock options.  However, we disagree with his characterization of the plan.  The stock options vested immediately, meaning that Maguire could have exercised them at anytime.  His ownership was not deferred in any way.  The plan also bestowed Maguire with a benefit beyond that of his normal compensation.  Through the plan, he had the opportunity to buy stocks at rate of $4.00 worth of Medtronic common stock for every $1.00 he invested.  Nor does the fact that some employees had the opportunity to exercise their option after retirement bring this plan under the purview of ERISA.  See Int'l Paper v. Suwyn, 978 F.Supp. 506, 510 (S.D.N.Y. 1997) (stating that "[i]n the absence of any evidence that the plan was designed 'primarily for the purpose of providing retirement income,' the plan's consequential effect of permitting some employees to enjoy after retirement the benefits of ECAs that were paid before retirement is merely incidental to the goal of providing current compensation.").  As a result, the plan cannot merely be described as deferring his normal compensation.

Furthermore, the stated purpose of the plan was "to motivate key personnel to produce a superior return to the shareholders of Medtronic . . . and its Affiliates by offering such

individuals an opportunity to realize Stock appreciation, by
facilitating Stock ownership, and by rewarding them for achieving
a high level of corporate performance.  This Plan is also intended
to facilitate recruiting and retaining key personnel of outstanding
ability." [Doc. No. 24, Ex. 2].  The Stock Option Plan was clearly
designed to reward employees for their performance, not to pay them
post-retirement benefits.

As a result, the court concludes that the Medtronic Stock
Option Plan is not an employee pension benefit plan pursuant to
ERISA.   Therefore, the court will grant Medtronic's motion to
dismiss as to Maguire's ERISA claim.  The court need not consider
Medtronic's ERISA statute of limitations claim.


C. Breach of Contract

Maguire's second claim is that Medtronic has breached the
terms of the contract by refusing to pay him benefits for which he
is owed under the Stock Option Plan.  In his complaint, Maguire
states: "The plaintiff stopped working with Medtronic, Inc. due to
disability in January 2002 . . . [t]he employment records of the
Plaintiff in possession of the Defendant clearly evidence that the
Plaintiff ended his employment with the Defendant in January 2002
on the basis of a disability."  [Doc. No. 24, pg. 2].  Maguire
affides that he left his employment because of depression, and that
Medtronic was aware that he was receiving medical treatment for his

10

depression.

Medtronic argues that Maguire has not alleged that he was disabled within the definition provided by the Stock Option Plan. Under the terms of the Stock Option Plan, an employee whose employment ends because of disability, death, or retirement has ten years from the date of the issuance of the stock option to exercise his rights under the plan. The Stock Option Plan defines "disability" by referencing "any retirement plan of the Company which is qualified under Section 401 of the (Internal Revenue) Code (of 1986)." According to Medtronic's Retirement Plan, a participant is considered "disabled" if he or she "is mentally or physically [d]isabled to such extent that such [p]articipant is entitled to receive disability income from any long-term disability plan." Medtronic's Long Term Disability Plan in turn provides, inter alia, that a person is not entitled to long-term disability unless they "have been totally disabled for 22 weeks in a rolling 12-month period."[2]

Medtronic argues that because Maguire does not allege that he was disabled within the definition of the company's long-

---

[2]

Medtronic has attached the "Medtronic and Participating Employers Retirement Plan" and the "Medtronic's Long Term Disability Plan" in support of its motion to dismiss. The court will consider these documents in disposing of the motion, even though they were not discussed in or attached to Maguire's amended complaint, because it finds that they are integral to the complaint. Bennett v. Itochu Intern., Inc., --- F.Supp.2d ----, 2010 WL 308982 *3 (E.D. Pa. Jan. 25, 2010).

term disability plan, the court should grant its motion to dismiss.

After reviewing the record, we conclude that Maguire has satisfied the 12(b)(6) standard, and will therefore deny Medtronic's motion to dismiss as to Maguire's breach of contract claim. Maguire has alleged that he had a disability, that Medtronic knew he had a disability, and that it was the reason he left the company. At this stage of the proceedings, that is all he is required to show. Twombly, 550 U.S. at 556, 563.

Medtronic also argues that Maguire's contract claim is barred by the statute of limitations for contracts, which in Pennsylvania is four years. 42 Pa. Cons. Stat. § 5525(a)(8). A cause of action for breach of contract accrues when the breach occurs. Keen v. Lockheed Martin Corp., 486 F. Supp. 2d 481, 494-95 (E. D. Pa. 2007) (citation omitted). Medtronic contends that any alleged breach would have occurred in February 2002, when Medtronic cancelled his options. However, accepting as true Maguire's claim that he left because of a disability, the alleged breach of contract did not occur until 2008 when Medtronic denied his stock option rights. As such, Maguire's contract claim would not be barred by the statute of limitations.

As a result, the court will deny Medtronic's motion to dismiss as to Maguire's breach of contract claim.

An appropriate order follows.

12

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM F. MAGUIRE,          )
                             )
            Plaintiff,       )
                             )
v.                           )     Civil Action No. 09-0908
                             )
MEDTRONIC, INC.,             )
                             )
            Defendant.       )

ORDER

AND NOW, this 26th day of February, 2010, it is hereby

ORDERED, ADJUDGED and DECREED that defendant's motion to dismiss

plaintiff's amended complaint [Doc. No. 25] is GRANTED IN PART and

DENIED IN PART.   Defendant's motion is GRANTED as to plaintiff's

ERISA claim and DENIED as to plaintiff's breach of contract claim.

BY THE COURT:

_____, C. J.

cc:   All Counsel of Record